UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| RANDY LEE VALENTINE, #198972, | Civil Action No.: 4:06-2314-HMH-TER |
| Plaintiff, | |
| -vs- | |
| | **REPORT AND RECOMMENDATION** |
| THIERY NETTLES, Major at Lieber Correctional Institution; JOHN CUSACK, Doctor at Lieber Correctional Institution; JOHN DOES, Officers; JANE GARMANY, Nurse at Gilliam Psychiatric Hospital; ROBIN HANCOCK, Health Counsel; RICHARD FRIERSON, Doctor at Gilliam Psychiatric Hospital; BRIAN R. BLANTON, Doctor at Gilliam Psychiatric Hospital; and JIM E. PAGE, Director-Hospital Administrator at Gilliam Psychiatric Hospital; sued in their individual capacities, | |
| Defendants. | |

I.   **INTRODUCTION**

Plaintiff, Randy Lee Valentine, is an inmate in the custody of the South Carolina Department of Corrections (SCDC) at the Lieber Correctional Institution (LCI). Plaintiff, proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. On February 12, 2007, Defendants Thierry Nettles, Robin Hancock, James E. Page, and Brian R. Blanton[1] (hereinafter, "Defendants") filed a Motion for Summary Judgment (Document # 21). The undersigned issued an Order, filed February 14, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the Motion for Summary Judgment and the possible consequences if he failed to respond

---

[1] The remaining defendants have not been served.

adequately. Plaintiff filed a Response (Document # 24) to the Motion on March 26, 2007. That same day, Plaintiff also filed a Motion for Summary Judgment (Document # 25). Defendants filed their Response (Document # 26) on March 27, 2007. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

## II. FACTUAL HISTORY

In his Complaint, Plaintiff alleges (1) that on August 14, 2004, he was kept naked in a holding cell without a toilet, toilet paper, a bed, a mattress and food for over 96 hours, that Thierry Nettles was aware of his situation, and that such action constitutes cruel and unusual punishment, (2) that on August 19, 2004, Dr. John Cusack wrote a false medical report stating that he has epilepsy or seizures and that such action constitutes gross negligence and that on March 12, 2005, Dr. Cusack ordered medication even after Plaintiff refused the medication and indicated that he did not take medication, (3) that on September 1, 2004, (and on two occasions prior to that date) he was handcuffed and taken to the shower by two "John Does" without a doctor's authorization or court order, and that such action constitutes cruel and unusual punishment, (4) that later in the day on September 1, 2004, he was handcuffed, restrained and thrown down on his face "in a vicious manner" with excessive use of force, which caused an injury to his left index finger, while a Nurse Jane Garmany injected pyschotropic medication in his buttocks against his will and without a court order, which was witnessed by Robin Hancock, and that such action constitutes cruel and unusual punishment, gross negligence and civil conspiracy, and (5) Dr. Richard Frierson, Dr. Brian Blanton, and Jim Page acted in conspiracy with the "John Does" and Nurse Jane Garmany to violate his rights

by attempting to implicate Plaintiff as being mentally ill. Plaintiff's Complaint at 5-11.

Defendant Thierry Nettles is a correctional officer, Robin Hancock is a mental health counselor, James E. Page is the Director at Gilliam and Brian Blanton is a medical doctor. They are all employed by SCDC.

The medical records attached to Defendants' Motion reveal that Dr. John Cusack reported on August 16, 2004, that Plaintiff had been in a holding cell for several days acting bizarre, mute, dazed, and bewildered. Ex. C to Defendant's Motion. The records further indicate that Plaintiff was put in the holding cell for crisis intervention because of reported unusual behaviors. Id. While in the holding cell, Plaintiff was lying on the floor with no clothes on, refused to put on his jumpsuit as instructed, refused to eat, and refused to take any medications. Id. Dr. Cusack diagnosed psychosis and ordered an anti-psychotic medication, Stelazine, and Benadryl for Plaintiff. Id. Plaintiff refused all medications ordered for him and so Dr. Cusack requested that Plaintiff be transferred to Gilliam for treatment. Id. Dr. Cusack noted that Plaintiff could not improve without his medications. Id. Plaintiff also refused to eat or wear his jumpsuit. Id. The corrections officers has to dress him for transfer to Gilliam. Id. The Application for Involuntary Emergency Hospitalization for Mental Illness indicates that "inmate is not looking after basic needs . . . evidence of being out of touch with reality by not speaking when talk to, posturing, and staring into space. He lies around in the nude." Ex. D.1 to Defendants' Motion.

On August 19, 2004, Plaintiff was involuntarily committed to Gilliam. Id. The admission evaluation to Gilliam documented that Plaintiff was not responsive, was posturing, and had incomprehensible speech when he did respond. Id. Because Plaintiff had a strong fecal odor, the staff at Gilliam placed him in the shower. Ex. D to Defendants' Motion. Plaintiff refused to undress

for the shower so the staff had to assist him. Id. Plaintiff was placed on Suicide Precaution status at that time. Id.

The records further reveal that Plaintiff was non-compliant with his medication and was observed standing on his food tray, eating off the floor, and urinating on the floor. Ex. D.1 to Defendants' Motion. Plaintiff was reported as being hostile and psychotic and as needing involuntary hospitalization for stabilization. Ex. D to Defendants' Motion. He was also observed with his head in the toilet and with his feet in the toilet. Id.

The records reveal that Plaintiff consistently refused to eat or take his medication while at Gilliam. Id. In a caseworker's progress note dated August 25, 2004, the caseworker indicated "will probably require forced medications in order to stabilize. . . . Will need psychotic evaluation on 8/26/04. Consider forced medications." Id. On August 26, 2004, Dr. Richard Frierson evaluated Plaintiff and ordered medication to be given by injection if Plaintiff refused to take them orally. Id. Dr. Frierson changed Plaintiff's anti-psychotic medication from Stelazine to Haloperidol. Id. The records reveal that Plaintiff took his medication orally on August 27, 2004. Id. On August 28, 2004, Plaintiff received forced medications and was assisted to the shower. Id. The notes indicate Plaintiff was non-compliant with his medication but did not resist the forced medication. Id. He received forced medications on several occasions after that. Id.

On August 31, 2004, an involuntary commitment hearing was held before Probate Judge Marvin Lawson. Id. Judge Lawson found that Plaintiff was mentally ill, "lack[ed] sufficient insight or capacity to make responsible decisions with respect to his treatment" and that "there [was] a likelihood of serious harm to himself or others" and ordered that Plaintiff be committed to a state mental health facility. Judge Lawson further ordered that Plaintiff take his medication. Id. A

-4-

caseworker's note on September 2, 2004, reveals that Plaintiff "is not med compliant therefore requires involuntary medications." Id. The notes also reveal that Plaintiff started eating portions of his meals. Id. On September 3, 2004, Plaintiff again received forced medications. Id. The notes indicate that Plaintiff's eating had improved as well as his psychotic symptoms. Id.

On September 9, 2004, Plaintiff's caseworker noted, "I/M Valentine has greatly improved. He no longer displays bizarre behaviors. His speech is normal. His thought process clear and goal directed. . . . I/M has expressed desire to leave [Gilliam] and return to his institution. He is compliant with his prescribed medications." Id.

Plaintiff returned to LCI on September 16, 2004. Id. He was reportedly compliant with his medications for a time. Id.

Defendants attach as Exhibit A to their Motion the affidavit of their expert, Dr. John P. Emerick, a Board Certified Psychiatrist. In the affidavit, Dr. Emerick avers that he reviewed "Mr. Valentine's complaint; his medical/mental health records from the South Carolina Department of Corrections, Leiber Correctional Institution, dated 6ll 7/03 to 8ll 6/06; his medical/mental health records from Gilliam Psychiatric Hospital dated 8/19/04 to 9/16/04; and his medical/mental health records from Greenville Hospital System dated 6/8/03 to 6ll 3/03." Emerick Aff. at 1-2. Based on his review of Plaintiff's medical records, Dr. Emerick opines that Plaintiff has a history of documented seizures and mental health problems and that Plaintiff "suffered a very severe psychotic episode, marked by severe impairment of reality, paranoia, delusions, hallucinations, an almost total loss of speech, poor appetite and refusal to wear clothes." Id. at 6. Dr. Emerick further stated, "in my opinion, without forced medication, it is doubtful that Mr. Valentine would have recovered and may not have survived, given the severity of his illness and his very poor oral intake. My review of

this record shows that Mr. Valentine received appropriate psychiatric treatment, which was lifesaving, despite Mr. Valentine's inability to cooperate in his treatment." Id. at 8.

In response to the Motion for Summary Judgment, Plaintiff provides several affidavits and attaches portions of the same medical records provided by Defendants. Each of the affidavits is signed by him. His first affidavit contradicts the medical records in that he avers he was forcibly administered medication only on September 1, 2004. Ex. 1 to Plaintiff's Response. The medical records do not indicate any forcible injection of medications on September 1, 2004, but show that Plaintiff received forced medications on other occasions before and after that date. In his first affidavit, Plaintiff also emphasizes that he does not have a seizure disorder as indicated by Dr. Brian Blanton and Dr. Richard Frierson. Id. However, according to Dr. Emerick, Plaintiff's medical records from Greenville Memorial Hospital (GMH)[2] indicate that Plaintiff suffered a seizure on June 8, 2003, while incarcerated at the Greenville County Detention Center (GCDC) and was transported to GMH for treatment. Emerick Aff. at 2. Plaintiff apparently suffered another grand mal seizure while at GMH. Id. Plaintiff admits that he had a seizure on June 7, 2003, but asserts that it was not as a result of drug withdrawal as stated in the records, but from being assaulted by the officers at GCDC. Plaintiff Aff. at ¶ 8.

In his fourth affidavit, Plaintiff attaches a medical record indicating that an x-ray was performed on his left hand on November 4, 2004. Ex. 4 to Plaintiff's Response. The results show a history of "fatty-like growth" and an impression of "unremarkable views of the left hand with no bony abnormality identified." Id.

---

[2]Plaintiff's medical records from GMH are not in this record.

**III.    STANDARD OF REVIEW**

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements

of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## IV.    DISCUSSION

Plaintiff assert that the actions of Defendants constitute cruel and unusual punishment, deliberate indifference, gross negligence and civil conspiracy.  The Plaintiff requests that the Court issue an injunction ordering Lieber Correctional Institution to pay his medical bills and that the Court award actual damages and punitive damages against each Defendant.

Defendants argue that Plaintiff's claims must fail because he cannot show that Defendants deprived him of any rights or privileges under the constitution or federal law.  Defendants also argue, assuming their conduct is deemed unconstitutional, they are entitled to qualified immunity.  In addition, they argue they cannot be held liable under 42 U.S.C. § 1983 based on a respondeat superior or vicarious liability theory.  Finally, Defendants argue that Plaintiff's allegations should be dismissed as meritless, frivolous, and malicious and that the dismissal be deemed a strike for purposes of the "three strike rule" pursuant to 28 U.S.C. § 1915(g).

Each of Plaintiff's allegations will be addressed separately.

### A.    Holding Cell Allegations

Plaintiff alleges that on August 14, 2004, he was kept naked in a holding cell without a toilet, toilet paper, a bed, a mattress and food for over 96 hours and that Thierry Nettles was aware of his situation.  Plaintiff avers to this set of facts in his seventh affidavit.  Ex. 7 to Plaintiff's Response. As stated above, the medical records submitted by Defendants indicate that Plaintiff was put in a holding cell for crisis intervention because of reported unusual behaviors.  While in the holding cell, Plaintiff was observed lying on the floor with no clothes on.  He refused to put on his jumpsuit as instructed, refused to eat, and refused to take any medications.  The records also note that Plaintiff

was observed standing on his bed and staring at his bed, thus, indicating the presence of a bed in the cell.

Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. Conditions must rise to the level of a deprivation of a basic human need such as food, warmth, or exercise. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991). In addition, prison officials cannot be held liable under the Eight Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Court of Appeals for the Fourth Circuit considered the case of Strickler v. Waters, 989 F.2d 1375 (4th Cir.1993). The Court in Strickler said that an inmate complaining about prison conditions must show that the challenged conditions resulted in a serious deprivation of a basic human need which, in turn, resulted in serious or significant physical or mental harm. While any of these conditions standing alone may not constitute cruel and unusual punishment, they may constitute Eighth Amendment violation if considered in aggregate, McElveen v. County of Prince William, 725 F.2d 954 (4th Cir.), cert. denied, 469 U.S. 819, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984). However, to be considered in aggregate, conditions must have mutually enforcing effects that produces deprivation of single, identifiable need such as food, warmth, or exercise. Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993)).

Although an issue of fact may exist as to whether Plaintiff was deprived basic need while he was in the holding cell, Plaintiff has not alleged that he suffered any serious or significant physical

or mental harm as a result of the challenged conditions. Further, Plaintiff has not produced any expert testimony or medical records that show he developed any medical condition as a result of his placement in the holding cell. Thus, Plaintiff's claim of cruel and unusual prison conditions fails.

Furthermore, to the extent Plaintiff argues that Nettles or any of the other Defendants participated in a civil conspiracy with regard to his placement in the holding cell, such a claim fails as well. To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. Hinkle v.. City of Clarksburg, 81 F.3d 416, 421 (4th Cir.1996). A plaintiff must come forward with specific evidence that each member of the alleged conspiracy shared the same conspiratorial objective. Id. To survive a summary judgment motion, a plaintiff's evidence must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." Id. A plaintiff's allegation must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. Id. at 422. The plaintiff must show that the defendants possessed an intent to commit an unlawful objective. Id. Here, Plaintiff has presented nothing other than his own speculation that there was a conspiracy. Thus, his claim must fail.

For the reasons set forth above, summary judgment is appropriate as to Plaintiff's holding cell allegations.

### B.     False Medical Report Allegations

Plaintiff alleges that Dr. John Cusack, "acting under color of state law," wrote a false medical report stating that he has epilepsy or seizures and that such action constitutes gross negligence.

According to Plaintiff, he does not have epilepsy and he has only suffered one seizure, which resulted from an assault by officers at the GCDC in 2003. Defendants' expert, Dr. Emerick, notes in his affidavit that Plaintiff's medical records from GMH reveal that Plaintiff suffered at least two seizures in 2003. More importantly, however, as noted in footnote 1, Dr. Cusack has not been served in this action. Plaintiff does not implicate the Defendants that have moved for summary judgment, Thierry Nettles, Robin Hancock, Dr. Brian Blanton or James E. Page, in this claim. Furthermore, to the extent Plaintiff alleges that these Defendants participated in a civil conspiracy in connection with these actions, such a claim must fail as Plaintiff has presented nothing other than his own speculation that any conspiracy existed. As such, summary judgment should be granted as to this claim.[3]

### C.     Handcuff and Shower Allegations

Plaintiff next alleges that he was handcuffed and taken to the shower by two "John Does" without a doctor's authorization or court order, and that such action constitutes cruel and unusual punishment. The records reveal that Plaintiff was escorted from his cell to the shower because officers detected a strong fecal odor on Plaintiff. As with the above claim, Plaintiff does not name Thierry Nettles, Robin Hancock, Dr. Brian Blanton or James E. Page in this claim. The "John Doe" Defendants have not been served. Furthermore, as stated above, Plaintiff has failed to show that these Defendants participated in a conspiracy with regard to these allegations. As such, summary judgment should be granted to these Defendants as to this claim.

---

[3]For the same reason, summary judgment should be granted as to Plaintiff's allegation that Dr. Cusack ordered medications for him on March 12, 2005, even after he refused the medications and indicated that he did not take medication.

### D.     Forced Medication Claim

Plaintiff next alleges that later in the day on September 1, 2004, he was handcuffed, restrained and thrown down on his face "in a vicious manner" with excessive use of force, which caused an injury to his left index finger, while a Nurse Jane Garmany injected pyschotropic medication in his buttocks against his will and without a court order, which was witnessed by Robin Hancock, and that such action constitutes cruel and unusual punishment, gross negligence and civil conspiracy.  The only Defendant named in this cause of action that is a party to the Motion for Summary Judgment is Robin Hancock.  Plaintiff does not argue that Hancock ordered the forced medication or that she participated in it–only that she witnessed it.  Neither the medical records submitted by Defendants nor the records submitted by Plaintiff verify that this specific event occurred.  The records do note that Plaintiff was forcibly injected with medication on other occasions while at Gilliam.  Importantly, however, Plaintiff complains only of the alleged event that occurred on September 1, 2004.

#### 1.     Due Process

Although not explicitly stated in his Complaint, Plaintiff appears to allege that his due process rights were violated by alleging that he was forcibly medicated without a court order.  An individual has a liberty interest in "avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." Washington v. Harper, 494 U.S. 210, 221-22 (1990). However, when an individual is confined in a state institution, individual liberties must be balanced against the interests of the institution in preventing the individual from harming himself or others residing or working in the institution. Harper, 494 U.S. at 222-23.

In <u>Harper</u>, the Supreme Court addressed both the substantive and procedural aspects of injecting an inmate with antipsychotic medication without his consent. As to the substantive aspect, the Court held, "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." <u>Id.</u> at 227. As for the procedural aspect, the Court held "an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." The Court specifically held that the lower court "erred in requiring a judicial hearing as a prerequisite for the involuntary treatment of prison inmates." <u>Id.</u> at 228.

In <u>U.S. v. Charters</u>, 863 F.2d 302, 308, 313 (4th Cir. 1988), the Fourth Circuit, sitting <u>en banc</u>, held "that due process is satisfied when the decision to medicate an involuntarily committed inmate is, in fact, based upon a doctor's "professional judgment." The court in <u>Charters</u> opined as follows:

> Making an acceptable professional judgment of the sort here in issue does not require any internal adversarial hearing. <u>Parham</u>, 442 U.S. at 607, 99 S.Ct. at 2506 ("not necessary that the deciding physician conduct a formal or quasi-formal hearing"). The decision may be based upon accepted medical practices in diagnosis, treatment and prognosis, with the aid of such technical tools and consultative techniques as are appropriate in the profession. <u>Id.</u> at 607-08, 99 S.Ct. at 2506-07.
>
> * * *
>
> The "professional judgment" standard also dictates the scope of judicial review. Under that standard, the question presented by a judicial challenge such as Charters' is not whether the treatment decision was the medically correct or most appropriate one. It is only whether the decision was made by an appropriate professional in the exercise of professional judgment, i.e., not arbitrarily. <u>See</u> <u>Siu</u>, 748 F.2d at 245. Due process is denied under this standard only if the decision was reached by such a "substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." <u>Romeo</u>, 457 U.S. at 323, 102 S.Ct. at 2462.

Id. at 312-313.

The opinion in Charters predated Harper but was pending on petition for certiorari while Harper was under consideration by the Supreme Court. As later observed by the Fourth Circuit, "[t]he Supreme Court presumably believed Charters' "professional medical judgment" standard sufficiently consistent with Harper 's due process standard that it did not even remand Charters for reconsideration in light of Harper, but rather denied certiorari in the case less than a week after issuing its opinion in Harper." Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir. 1996).

In the present case, Defendant's expert, Dr. Emerick, opined, "in my opinion, without forced medication, it is doubtful that Mr. Valentine would have recovered and may not have survived, given the severity of his illness and his very poor oral intake. My review of this record shows that Mr. Valentine received appropriate psychiatric treatment, which was lifesaving, despite Mr. Valentine's inability to cooperate in his treatment." Emerick Aff. at 8.

Plaintiff argues that Defendants forcibly medicated him without first obtaining a court order. As the Supreme Court made clear in Harper, a judicial hearing is not a necessary prerequisite. The undersigned finds that the decision to forcibly medicate Plaintiff was not such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that Dr. Frierson actually did not base the decision on such a judgment.

Nevertheless, even assuming, arguendo, that Dr. Frierson's decision was not based on professional judgment, he has not been served in this case and is not a party to the Motion for Summary Judgment. Hancock, the only served Defendant named in this particular claim, neither ordered that the forced medication be given nor injected Plaintiff with the forced medication. As

alleged by Plaintiff, she merely witnessed the event.  Therefore, Hancock is entitled to qualified immunity as her conduct did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known.

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow</u>, 457 U.S. at 818.  In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir.1994) (internal citations omitted), <u>cert. denied</u>, 516 U.S. 824 (1995).

Hancock did not violate any of Plaintiff's clearly established statutory or constitutional rights simply by witnessing him be forcibly injected with medication.  Thus, she is entitled to qualified immunity on this claim.  Further, there is no supervisory liability because Plaintiff has not alleged and the record does not reveal that Hancock served in any supervisory capacity over Dr. Firerson,

who order the administration of forced medications, or Nurse Jane Garmany, who actually administered the forced medications.

    2.  Excessive Force

  Plaintiff also alleges that excessive force was used to medicate him against his will, which constitutes cruel and unusual punishment. The Eighth Amendment protects against the use of excessive force by prison officials who inflict "cruel and unusual punishment" on an inmate. This amendment is applied to the states through the Fourteenth Amendment and protects state inmates from excessive force by correctional officers. Because prison officials must act "in haste, under pressure, and frequently without the luxury of a second chance," deliberate indifference is not a sufficiently rigorous standard. Whitley v. Albers, 475 U.S. 312 (1986). The courts have consistently recognized that prison officials are entitled to use force, and that not every action taken by prison officials amounts to excessive force. Stanley v. Hejirika, 134 F.3d 629 (4th Cir. 1998). "After incarceration, only the unnecessary and wanton infliction of pain constitutes . . . cruel and unusual punishment forbidden by the Eighth Amendment." Whitley, 475 U.S. at 319.

  An inmate must satisfy both a subjective requirement and an objective requirement in order to prove that prison officials violated his constitutional rights through use of excessive force. To satisfy the subjective requirement, he must show that the force used by the corrections officers "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillan, 503 U.S. 1, 6 (1993). In analyzing the subjective requirement, four factors must be balanced to determine whether the prison officials acted "maliciously and sadistically for the very purpose of causing harm" as set forth in Whitley v. Albers, 475 U.S. at 320-21: (1) the need for application of force, (2) the relationship

between that need and the amount of force used, (3) the threat "reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response."

Additionally, an inmate must satisfy an objective requirement, ie. , he must show that the actions of the corrections officers, taken in context, were "objectively harmful enough" to offend "contemporary standards of decency." Id. at 8. In determining whether the objective component is satisfied, the force applied and the seriousness of the resulting injury against the need for the use of force must be evaluated. Plaintiff has not met this burden.

Additionally, Plaintiff alleges only that he suffered a fatty growth on his left ring finger as a result of the force used. The medical record submitted to verify this injury is an x-ray taken two months after the incident. The record indicates only a history of a fatty like growth on his left hand. Plaintiff must show more than de minimis pain or injury. Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir.1994), cert. denied, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995). Although a plaintiff need not show a significant injury, the court in Norman held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Plaintiff has not shown more than de minimis pain or injury. The lack of any serious injury compels the conclusion as a matter of law that the plaintiff suffered no constitutional deprivation when he was restrained by the defendants. See Taylor, 155 F.3d at 484.

From the evidence presented, it is appropriate to conclude that the amount of force used to inject Plaintiff with his prescribed medication was reasonable and minimal. It cannot be concluded that there is a genuine issue of material fact regarding the use of force by the prison guards "maliciously for the very purpose of causing harm." Williams v. Benjamin, 77 F. 3d 756 (4th Cir.

1996).

Furthermore, as stated above, Hancock did not participate in the use of force applied to Plaintiff. Therefore, Plaintiff fails to state a constitutional claim against her and she is entitled to qualified immunity as to Plaintiff's excessive use of force allegation as well.

Furthermore, Plaintiff fails to present sufficient evidence to suggest that Hancock or any of the other Defendants participated in a civil conspiracy to deprive him of his constitutional rights. Thus, for the reasons set forth above, summary judgment should be granted as to Plaintiff's claims regarding the forced medication.

### D.    State Law Claims for Gross Negligence and Civil Conspiracy

Finally, to the extent Plaintiff contends he has state law claims for gross negligence and civil conspiracy, it is recommended that this court decline jurisdiction. This Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## V.    CONCLUSION

For the reasons set forth above, it is recommended that Defendants' Motion for Summary Judgment (Document # 21) be granted and Plaintiff's Motion for Summary Judgment (Document # 25) be denied.  Furthermore, it is recommended that this action be dismissed in its entirety as the remaining Defendants have not been served.[4]

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

June 13, 2007  
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[4]Defendants request that this dismissal be deemed a strike for purposes of the "three strike rule" pursuant to 28 U.S.C. § 1915(g).  Based on the alleged underlying circumstances involving a potential psychotic condition, it is recommended that this dismissal not be deemed a strike.